Thank you and again welcome. So, this is going to be held like a normal live argument, you've got 15 minutes per side. Unless petitioner wants to reserve some, I mean, either way you get 15 minutes per side. I'm going to be timing, I suggest you do the same. I'll let you know when your time's up. And right now, does petitioner want to reserve some time for a bottle. We'll reserve three minutes. Okay, great. That would, that's granted, and you may proceed petitioner. Thank you. If it please the court. My name is Sandra green Council for Jarvin Lopez, a native and citizen of El Salvador, who has asked this along with the 212 age waiver of inadmissibility. He has fiction for a, a minor marijuana offense. Mr. Lopez has asserted that the board's legal rationale for the denial of the requested relief was inadequate and has that has requested that this board review that that board determinate that this review that board determination. Okay, for a second you're familiar. I'm sure we're the inner a YMP presidential, and I know you can make the argument that is distinguishable because that was a different special rule that the petitioner there was relying upon to get the 212 age waiver. Let's assume that we conclude that even though it's different it's not sufficiently different to distinguish in that YMP. If it doesn't control at least we have to give it serious consideration. Given that, how would we rule in your favor within the parameters of the VA decision in YMP and also boost the mantra which was decided before YMP. Well, with respect to boost the mantra. The board itself acknowledged that boost the mantra is different nature, because it doesn't deal with special rule cancellation of removal it's a it's a case that deals with what the board is called regular cancellation of removal so I think Mr Monte is a limited for this court for purposes of its education of petition with respect to YMP, I think the board made errors. The first mistake was that, well, what acknowledges in YMP that although it calls cancellation of removal regular cancellation of removal, individuals such as Mr. Lopez have to establish either that they're not admissible or that they're not deportable, whereas other applicants for cancellation of removal have to establish that they are that they haven't been convicted of a specific. But you can see that your client is not petitioning for cancellation of removal, the cancellation removal is something which follows automatically as a matter of law, actually, if he is afforded the Attorney General's favorable exercise of discretion and gets the waiver. Given the wording, and the way that it's worded in the in the statute and also the regulations where it focuses on one is seeking or what is petitioning for cancellation of removal. Why wouldn't the distinction that YMP make still be pretty persuasive here because Mr. Lopez is not really petitioning for cancellation of removal he's hoping to get that relief as a result of the Attorney General's exercise the discretion but that's not what he's petitioning for. Is the court saying that he's not, I mean he has a special rule cancellation of removal is cancellation of removal so there's a court rule, he's not actually applying for adjustment of status because he's not filing a form I 485, is that what the court is asking. Well you basically that he's not. It looks to me like you can clearly make the argument that since cancellation of removal automatically follows upon. I'm sorry just my status adjustment of status automatically follows upon him getting the waiver, but he's not petitioning for asking for adjustment of status whether other situations where one is formally petitioning for adjustment of status. That does seem to be a distinction. That would suggest that YMP analysis is a rational one, and that we should afford it several on difference and given that I'm because I'm wondering how you would prevail, unless we were to somehow conclude the YMP was not rational. It is not afforded deference or that somehow the statute is not ambiguous that's that was a tough argument to make. Well, I think I'm glad the court mentioned the ambiguity the board, as it has, as it, as its decision indicates seems to be pretty clear that there is no ambiguity, and as government. As the respondents indicated in their brief, at least two circuit courts have found that there is ambiguity in the statute so that in and of itself, I would argue would require remand, because the board is asserting that it's it's clear and unambiguous and circuit courts have said no, they actually the language is very, very, if I can interrupt I mean, I think what the court has taught post Chevron particularly in Kaiser is we only, we would only get into this deference posture. If there were some inability to ascertain ordinary meaning using all the tools and statutory interpretation so let's put aside for a moment where other courts have done, I'm struggling to see where there isn't a clear reading of of the statute here that precludes to 12 age relief, and I thought judgment key summarized it well, as I understand it what you're trying to do is you're seeking an application for cancellation of removal and saying that effectively as an application for adjustment of status with because it results in legal permanent residency. I certainly understand why that argument is being made but I don't see how that doesn't fight what to 12 each has said since it was enacted back in 1957 so help me understand where withers, some sort of imprecision in the statutory framework. Yeah, what I was mentioning before with the decision in my MP, the board has said that individuals such as Mr. Lopez have to show that they're not inadmissible, and that's the link that changes the form of relief to essentially adjustment of status which would allow him to apply for to 12 age waiver, because he has to establish that he's not inadmissible, which is the standard for adjustment of status, we are arguing, there's a significant difference between that obligation on his part and what should not show Chevron deference deference to the board's decision, because it is the references the self defense waiver for VA law applicants, and it says that the fact that Congress included that waiver that self defense waiver in the body of the cancellation statute to give to 12 age relief would be superb superfluous, and we would argue that actually the self defense waiver is a different type of waiver. It's not a waiver granted to someone after the person has been deemed to be removable for an offense. It's a waiver of the Attorney General's option to prosecute someone who has who isn't a victim of domestic violence, but who has been charged either stalking for or domestic domestic violence offense. So, the ability of the Attorney General to decide not to prosecute someone because they have a valid assertion of self defense is not the same as a to 12 age waiver. So the fact that the self defense waiver is incorporated within the body of the Bible statute the cancellation statute is not does not render the respondents are the petitioners are superfluous, and we would argue that it's not rational, and that the court should not have a court Chevron deference to it. So go just going back to the, to the pre Chevron analysis question again I, I understood you to be arguing that Nicara has effectively amended to 12 age. And I think we would probably I think you probably would agree Nicara doesn't doesn't say that expressly so. So, so what's, what's your argument as to how section 204 amendment of the INA silently or impliedly or implicitly or contextually or however you would describe it amended to 12 age so that so that this contemporaneous relief that that you're that the petitioner seeking could be granted. Again, I would ask the court to to look at the standard that the board says is applicable to an alien such as Mr. Lopez, the board in ymp has made the distinction between what the burden of proof is for alien seeking relief individuals such as Mr. applicants for cancellation of removal. That's a salient difference and we believe that that is what connects the petitioners request for to age, as well as the cancellation of removal. Can I just ask you something I probably should have asked you right off the bat I was a little bit confused on page 18 of your brief, you discuss quote the 1998 version of the cancellation statute. Is there, I thought that you mean by reference is there's was there some change, I found that a little bit confusing I thought we were all looking at the 1997 Nicara statute. You reference in 1998 one I don't know if that's a typo or whether there's some real substance to, to that might have been from the national date your honor. Okay. All right. So I think we're all talking about the same thing here. I hope. Yes. Okay. Do you have any more counsel you'd like to say, not at this point I will reserve comments. I have another question then. If, if there is a real ambiguity here and we do get into deference. What type of deference should we give the bias decision in this case, where it's a single member unpublished decision. I would say would be minimal deference your honor. It's not a published decision of the board. It's not. Why, and for that reason we, I would ask for minimal deference. Okay, great. I asked my colleagues if they have any other questions. I have none. No, nothing further. Okay, thank you counsel will get you on rebuttal and we'll hear from Mr Hurley. Please the court James Hurley for the Attorney General. The petition for review should be denied for two reasons. First, the board correctly found that Mr Lopez could not use a 212 H waiver to avoid the stricter standards for Nicara, where he was convicted of a controlled substance offense. And second, there was no due process violation in this case. To go to the first point, as instructed by this court, and it's December to 2018 decision the board specifically looked at the relationship between the statutes, the regulations and YMP and did a thorough analysis of his eligibility. In this case, and it walked through the steps, and it found that on its face to 12 age, just applies to somebody who's applying for a visa admission or adjustment of status, and because Mr. Lopez is applying for cancellation of removal he just doesn't fit within that category. Can I ask you, I'm going to pick up where some of where my colleagues left off. Is there an ambiguity here in the view of the government. Well that's, we would point to the other two circuit court cases where it's it's the question that you guys discussed before where it's the relationship between cancellation and adjustment of status, we understand what the other circuit said we're, we're asking you, in this So, there is some confusion about and that's what kind of ties in the to 12 age waiver where you where you might think, Oh, I can use it. This is adjustment of status I can use this waiver, but in this case for Nicara cancellation removal. The, the adjustment presupposes that you qualify for cancellation of removal. So you can't get over, you can't use the waiver to get cancellation of removal because this is this is a. He's asking for cancellation of removal not for adjustment of status. So that just can I, I just want to make sure I understand your argument, I mean the mere plausibility that there could be possibly a different way to read this I didn't think that that is that still your answer that there is irreconcilable, and no, no, and when that's why I was pointing at the other. The circuits and the y&p decision that that, why do we need to just if you, and I don't want to get too far off your point here but I don't before you get to that why as a matter of the statute why as a matter of Nicara and to 12, each. Do you read this and say, No, there's just no way to make sense of the system. Yeah, no. I mean to return to the point that the Third Circuit remanded this case for us to look to examine those the statute and so there was there was some, you know, confusion about adjustment of status or cancellation or cancellation, you know, with the adjustment So it's just, that's why the court sent it back down to the board anyway just to clarify and address why you know why, in this case, he didn't qualify, or he couldn't use it to 12 age waiver. Hold on, I don't think we, we didn't hold that this was ambiguous right no you didn't know it, you didn't say it was ambiguous but you said, please address this and explain it. And, and that's what happened in this case you sent and you send it back down to the board and the board said okay, we'll walk through these steps, and it followed the same blueprint of the y&p decision that discussed VAWA cancellation. And similarly it says you can't use this to 12 age waiver to qualify for VAWA cancellation, because for the reason set forth about how you know this isn't he isn't applying for adjustment, this is this is a cancellation case and to 12 age only applies to applying for a visa admission or adjustment of status. And then you have to look at to the car statute itself, there's two separate provisions there's one for adjustment of status under the car. And there's one for cancellation. He's not applying for adjustment under the car he's applying for cancellation. And the whole point is that does that basically to take the simplest approach, just looking at the statute and the way it's worded, what you just said is a way out without overthinking this case. And that's true. And that's what it's pretty straightforward if you just walk through the steps, and that's what the Third Circuit asked the board to do they didn't do that in their original 2017 decision, I think they just, they looked at the fact that his controlled substance conviction was from 2015. And they said, well he doesn't have the, the, you need to time it from the, the, the date of his conviction for as far as occurring the continuous physical presence. And, you know, this, this happened in 2017 was a was a board decision that his conviction was 2015 so they said, he doesn't, he doesn't have the qualified time so he doesn't get cancellation. But then when we went up to the Third Circuit originally, the court asked for a better explanation about why he didn't qualify for it so the court set it down to the board and the board walk through the steps, following the same blueprint that it did for the YMP decision, and it said that, okay, let's let's look at the statute. First, he's not applying for, you know, a visa or admission or adjustment status. There are two separate NACARA provisions one for adjustment one for cancellation. And as far as the superfluous point, it says, well, when Congress wants you to be able to use a visa or use a waiver it'll say so. And that's what what the 1229 b five. That's a waiver for domestic violence. So you can use a waiver there. And then, as far as the NACARA regulations and the court asked about this before. And the board didn't address before but they did it now, but they said the NACARA adjustment status regulation at 1245.1 F says that the sole method for seeking for using a 212 H waiver is for adjustment under NACARA and the 1245.3 c one talks about using a waiver is for for NACARA adjustment, whereas the 1246 six, which is specific for the cancellation of removal under NACARA doesn't mention anything about waivers. And then, again, I would just point to the YMP decision where, again, that that discussed VAWA the the cancellation of removal there. And similarly, it has, we will cancel the removal for these VAWA applicants and they can adjust status but you can't use a 212 H waiver to to qualify for that. And then, so I would again point to the analysis of the two other circuit courts in the Arabello case in the 11th Circuit and the Garcia Mendez where they defer to the to the board about the analysis in this case. And then as far as the final points about the you can't read a general rule of lenity into a into a statute where the where Congress hasn't provided for that. The board was correct in that respect as well. The rule of lenity doesn't really apply here, though, does it? Well, it was an argument that was made about whether or not this is just a question of time, whether the seven versus the 10 years, you know, we can just wait this out. And the board addressed that and said, you know, this isn't just a matter of time there. It's it's the requirements are different. It's not only it goes from 10, it goes to 10 years from seven years. You also have to show a greater amount of hardship between the just. And the point at which the clock starts to run is also different between statutes. 10 years from X and seven years from Y is not the same. Yeah, well, I think the the the operative date for when the clock starts is when the the conviction that puts him into the two twelve eight to twelve removability. So in this case, originally he had TPS from his mom and then he got convicted of the 2009. He had the convictions for the harassment and resisting arrest. So that's that put him in and removal proceedings. And he was it was interesting. You have to look at the record, too, where he was originally in proceedings with his sisters and his sisters qualified for for the car cancellation. They got that. But then they they waited for him because he had those convictions. And then during proceedings, he got arrested and got and then had this controlled substance conviction. So that kind of upset the timing. And I think the original board decision they said, you know, they denied cancellation of the car because they just said, oh, he doesn't have the time. But it didn't really get into detail. And then the Third Circuit sent it back down for the for the board to flush it out. And that's what they did in this case. I asked your adversary as well. Assuming we do see an ambiguity, what level of deference do we pay to the BIA's decision here? Well, as I I started in the brief, I said you would apply Chevron deference. But if if you find I noted, too, that the Third Circuit had a case where it said, you know, we don't we don't apply Chevron for unpublished one board member decision. So we would say to Skidmore that there was some deference just based on the expertise of the board in this case. And, you know, in this case, it doesn't entail any kind of analysis of a criminal statute or, you know, a state or federal criminal statute. This isn't removability. It's just purely whether or not he qualifies for either, you know, the car cancellation and just studying the relationship with adjustment of status with that. And that's and the board is expert on that. Well, that was our prior decision. It sounds like you're arguing we ought to be applying Chevron deference then. We start with that. And if you make that argument, if you do find ambiguous, ambiguous, ambiguous, ambiguous, then you would do that. But if not, if you if you think, you know, it just stands on its own, too. But again, there's there's a question that it could be ambiguous if because it says, you know, in the car statute, it says cancellation removal and then you get this adjustment right at the end. But again, you have to qualify for cancellation first. And then because that presupposes just adjustment, because if he qualifies for cancellation, then you don't just you have to something has to happen. You're not just in limbo. You have to you get the residency, legal residency as a result of getting that. And that's where the adjustment comes in. OK. I have a general question. It's my understanding that most of the deadlines for Nicaragua relief passed long ago. For purposes of our understanding the breadth of this issue, can you tell us whether there are many of these types of cases, Nicaragua special rule cancellations that are still in the system, or is this, you know, this is the last of the group. I can't really speak to that. I know I've you know, I've been here for 15 years and this is you know, this case has been around for a while. I'm not sure if there's a whole group of those right now or not. I think. I can't I can't answer that. Are you aware of any others that are around or. I'm not. And, and then talking with my supervisors, you know, and preparing for the argument. You know, they just made a comment but again, that's just, you know, just speaking amongst ourselves so I'm not aware of that. But I can look into it, if you'd like me to. Well, that's okay I just wondered if you knew. That's all right. Okay, thank you. You can continue you have a couple minutes if you have anything else you'd like to say. No, I think I've just made my point where the originally with this, this came up in the third circuit had their decision in 2018 they asked the board to, to look at a seven page detailed analysis of the law, and just determined that that Mr. Lopez could not use the to 12 age waiver to qualify, or to avoid the consequences of the heightened requirements for Nicara cancellation of removal. Okay. If there are no further questions. Okay, my, my colleagues Do you have any other things you'd like to ask I have nothing further. Okay. All right. Thank you, counsel. We will hear from your adversary and her rebuttal. Yes, I would just say, and again reiterate that the board did not the board. The analysis was flawed to the extent that it references the, the self defense waiver of the Bible statute as a justification for finding that there's no possibility that Congress intended to permit aliens seeking special cancellation of removal to apply for a concurrent to 12 age waiver. Again, the waiver, the self defense waiver is a waiver of the Attorney General's authority to actually launch a, a removal prosecution is not the Attorney General's authority to waive a finding of removability that has already been entered. I would ask that this that this court remand the matter to the board and find in favor of the petitioner but at the very least, because the board did not acknowledge any ambiguity in the statute at all, and address it as a matter of definitive law that matter should be remanded to the board for further analysis. Thank you. Thank you, counsel. We asked my colleagues, do you have any other questions you'd like to ask of counsel, I have none. Nothing. Okay, thank you. We thank both counsel for their excellent arguments today and their briefing and their excellent briefing as well. We'll take this case under advisement. And thank you again for doing this via via zoom. We're appreciative and we hope you we get to see live soon. So we'll ask the, the, thank you, and be well and we'll ask the clerk to call the next case. Thank you. Thank you. Thank you.